57 CCPA

**Application of Robert Smith PRENGLE and Frederick Robert Winter.**

**Patent Appeal No. 8305.**

United States Court of Customs and Patent Appeals.

June 18, 1970.

Claude L. Beaudoin, attorney of record, for appellants. James T. Corle, Arlington, Va., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. J. Nakamura, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

WORLEY, Chief Judge.

The issue here is whether the Board of Appeals committed reversible error in

sustaining the examiner's rejection of claims 3 and 5 [1] as obvious under 35 U.S.C. § 103 in view of certain prior art.

The invention relates to a method of heat-treating biaxially-oriented polyethylene terephthalate or polyvinyl chloride films to render them dimensionally stable and resistant to shrinkage at temperatures below the heat-treating temperatures. As background, appellants' specification explains the problems associated with a prior art process:

> In the conventional method for the production of biaxially oriented, organic, thermoplastic, crystallizable polymeric film, such as polyethylene terephthalate film, the film, in substantially amorphous state, is first stretched in a longitudinal direction (direction of extrusion) to the desired amount between differential speed rolls. The film is then stretched in the transverse direction in a tenter frame, and the biaxially oriented film is thereafter heat treated at elevated temperatures (150° C.–200°C.) while under tension in an extension of the tenter frame to render the film dimensionally stable. This method of heat treating the film in an extension of the tenter frame has two serious drawbacks. In the first place, conventional tenter frame stretching devices are limited by practicality as to speed. * * *

> Secondly, and of far more serious a nature, is the tendency for the film during transverse stretching in tenter frame to experience a lagging of its central portion behind its edges. This phenomenon, hereinafter referred to as "bowing" of the film, results from the high forces set up in the longitudinal direction during transverse direction stretching in a tenter frame. On heat treating the film at elevated temperatures, the film is softened and less resilient to the longitudinal direction forces created by the transverse direction stretching. The center of the film not subject to the restraint of the tenter clips holding the edges from "necking-in," as a consequence, suffers distortions; thereby creating considerable lag between it and the edge portions of the film. The resultant film exhibits a considerable non-uniformity in thickness and an undesirable imbalance in tensile properties, particularly as measured at an angle of 45° (along the diagonals) to the longitudinal direction. The unbalanced tensile properties along the diagonals, which properties are associated with "bowing," also result in unbalanced dimensional stability along the diagonals.

Appellants' solution to those problems generally involves replacing the above-described tenter frame extension assembly with a pair of rollers, the details of which are reflected in claim 3 considered with its independent claim 2 [2]:

> 2. A process for heat treating film which comprises rapidly heating a continuous web of molecularly oriented polyethylene terephthalate film by continuously contact rolling said web without deformation by passing said web through the nip formed between two parallel, pressed-together, rotating cylindrical surfaces, at least one of said surfaces being maintained at a predetermined temperature effective to heat treat the film, and one of said surfaces being a resilient surface of high temperature-resistant elastomeric material; permitting the film to relax to a predetermined extent; and thereafter continuously quenching the resulting heat-treated film.

> 3. The process of Claim 2 wherein the web is biaxially oriented polyethylene terephthalate film.

---

1. Appearing in application serial No. 450,-236 for "Process for Heat Treating Polymeric Films," filed April 9, 1965 as a continuation-in-part of serial Nos. 204,270, filed June 21, 1962 and 10,216, filed February 23, 1960. At oral argument, appellants' counsel withdrew appeal as to claims 1, 2, 4 and 6–12.

2. Dependent claim 5 and its independent claim 4 differ from the above claims in reciting the film to be polyvinyl chloride.

The specification explains the advantages of the claimed process:

> * * * An essential feature of the present invention is that one of the surfaces between which the film is continuously passed be a resilient surface of high temperature-resistant elastomeric material. The use of such a surface on one of the rolls of each set of rolls imparts three important advantages to the process: (1) an elastomeric coated roll resistant to high temperatures will depress upon coming in contact with the film, thus giving sufficient area in which heat transfer from the roll to the film can occur. Two metal rolls would result in line contact with the film only, thus reducing the effective area of heat transfer. (2) An elastomeric covered roll allows for more even contact with the film. (3) The utilization of an elastomeric covered roll prevents any deformation of the film as it passes through the nip due to the depression of the covered roll itself. * * *

> On coming in contact with the heated rolls, the film is very rapidly brought up to the desired temperature since resistance to heat transfer between the film and the roll is essentially zero at the nip of the rolls. Since air is excluded in the nip of the rolls, when dealing with thin films, heat is transferred at a tremendously higher rate than is possible with an arrangement wherein the film is wrapped around a heated roll. * * *

The references [3] are:

Chavannes 2,812,550 Nov. 12, 1957
Australian
   Patent 138,328 June 12, 1947

The examiner rejected the claims as obvious over the Australian patent in view of Chavannes. As the examiner observed, Australian discloses numerous processes for uniaxial or biaxial orientation of polyethylene terephthalate film, and subsequent heat treatment, relaxation and cooling of that film to effect thermal stability and permanence of shape. In particular, Australian states:

> The apparatus used for the heat setting and relaxing treatment may be of similar construction to that used in the orientation operation. A *one-dimensional* heat setting treatment may be carried out for example by passing the film *from a set of pinch rolls* at least one of which is heated to the required temperature, *to a second set of pinch rolls rotating* at the same speed or, *if relaxation is desired, at a slightly slower speed.* * * * Heat setting and relaxing after a *two dimensional* orientation may be carried out for example by using the system described above *for the longitudinal operation* and using clamps fitted to the edge of the film to control shrinkage in a lateral direction. * * * [Emphasis supplied.]

Noting that Australian does not specify the use of a roll surfaced with a resilient elastomeric material as one of the first pair of pinch rolls, the examiner turned to Chavannes, who discloses a process for orienting and heat-setting polyvinyl chloride film by passing it around and over a series of heated rolls. Of particular interest, thought the examiner, was Chavannes' disclosure of the advantages of using a rubber-covered roll, termed a "backroll," to press the film against the surface of one of the heated rolls:

> The film then passes over the backroll 20 and almost completely around the heating roll or drum 21 as at 22. The back roll 20 is preferably covered with rubber. Further, the use of a rubber backroll 20 permits the *contiguous* positioning the back roll and the heating roll 21 so as to *press* or *forcibly apply* the film to the surface of the heating roll. Such an arrangement has been found to effect *complete surface contact* of the film with the heating roll 21 and thereby provide uniform heat-

---

3. As the solicitor pointed out at oral argument, it is unnecessary to consider a third reference applied by the examiner only to claims 9 and 11, among those no longer the subject of appeal.

ing of the film as it travels around the heating roll. *The contiguous relation of the back roll 20 and heating roll 21 prevents the formation of air pockets between the film and heating roll, which would result in irregular heating and wrinkling of the film.* [Emphasis supplied.]

The board shared the examiner's view that the claims differ from the heat-setting process disclosed by Australian mainly in the nature of the heating rolls employed. It stated:

As indicated in * * * appellant's specification the employment of a pair of rolls one of which is heated and the other of which has an elastomeric resilient surface in the overall process results in several improvements mainly related to heat transfer and prevention of deformation of the film. Since these advantages of the employment of such a pair of rolls are well known to the art as taught in Chavannes * * * it is, in our opinion, quite obvious to one skilled in this art to replace the heating rolls of the Australian Patent by a pair of rolls, one of which is heated and the other of which is rubber covered, to obtain the advantages clearly taught by Chavannes in a similar heating roll combination. Appellants' claimed process thus becomes obvious to one having no more than ordinary skill and knowledge in this art. * * *

Appellants' arguments here are, in the main, three-fold. First, they urge that Australian does not disclose heat-setting a *biaxially*-oriented film by feeding it into the nip of a pair of heated rolls and then passing it to a pair of unheated rolls driven at a slower speed than the first pair—at best, they contend, Australian only discloses subjecting a *uniaxially*-oriented film to such a process. The process actually disclosed by Australian for heat-treating biaxially-oriented film, appellants maintain, is identical to the "conventional technique" which appellants describe in their specification, heretofore quoted, and which does not employ pinch rolls in the heat-setting operation.

As is evident from the decisions below, the examiner and board did not agree with appellants' interpretation of the Australian disclosure, nor do we. We think that Australian, in stating that heat-setting and relaxing of a biaxially-oriented film can be carried out using "the system described above for the longitudinal [uniaxial] operation," fully discloses to one of ordinary skill in the art feeding that film to the nip of a pair of pinch rolls, one of which is suitably heated. The fallacy in appellants' argument *that the process disclosed by Australian for heat-setting biaxially-oriented film is the same as that described in their specification as "conventional"* seems to stem from their apparent failure to recognize that Australian does pass the biaxially-oriented film through a set of pinch rolls after completion of the orientation process and at the start of the heat-setting process.

Appellants further urge that the board misapprehended and misapplied the Chavannes disclosure in relation to its discussion of the advantages of roll structures having a resilient elastomeric surface. They argue:

* * * It is manifestly clear that rubber-covered roll 20 [of Chavannes] performs no function regarding the heating of the film structure, but, instead, the film structure is heated by the relatively long path of travel around substantially the entire periphery of heating roll 21. In fact, as depicted in Figure 1 of *Chavannes,* rubber-covered back roll 20 does not even engage the surface of heating roll 21, but is disposed a substantial distance from the periphery of heating roll 21. It is manifestly clear that the combination of rubber-covered back roll 20 and heating roll 21 does not provide a combination of roll structures that can properly be characterized as "nip roll structures" contemplated and comprehended by Appellants. * * *

We do not agree. While it is true that Figure 1 of Chavannes does not illustrate the back 20 and heated roll 21 in actual contact to form a nip, the board noted

that the specification of Chavannes, as quoted earlier, does disclose and emphasize the advantages of "contiguous [4] positioning" of the back roll and heating roll to press or otherwise forcibly apply the film to the surface of the heating roll in a manner to exclude air and to prevent irregular heating and wrinkling of the film. In light of Chavannes' use of the word "contiguous," we think it would be fully apparent to one of ordinary skill that actual contact of the backing and heating rolls was contemplated by Chavannes as a possible, if not preferred, alternative. Moreover, appellants' disparagement of the Chavannes disclosure, based on the fact the film is heated during its travel around the periphery of the heating roll, seems misplaced in view of their own disclosure that at high speed operation sufficient "dwell time" to effect heat-setting is gained by wrapping the film about the periphery of one of the heating rolls after it leaves the nip of those rolls. We agree with the examiner and board that it would be obvious to one of ordinary skill to utilize a rubber-covered roll as one of the pinch rolls in Australian in consideration of the advantages ascribed to such use by Chavannes.

Finally, appellants argue that no reference mentions the problem of "bowing," or foreshadows their solution thereto and its concomitant superior results over a prior art process which are detailed in their specification. As far as the record shows, "bowing" is peculiar to one particular process and apparatus appellants describe as extant in the prior art for orienting and heat-setting thermoplastic film—namely, a process in which the film is drawn longitudinally between two pairs of rolls revolving at different speeds, stretched transversely by tenter frame clips which engage the edges of the film and travel a divergent path, and finally heat-set in an extension of the tenter frame assembly wherein the film is heated while held in transverse tension by the tenter clips. But, as noted earlier, that is *not* the process carried out by Australian and, as correctly observed by the examiner:

> While applicants dwell at length on the alleged problem of "bowing" in the film processing, there is no reason to assume and no data to support that such a problem is not solved by the process of the Australian patent which is essentially applicants' process minus the rubber covered roll.

The record does not show, in other words, that the problem of "bowing" exists in the particular orienting and heat-setting process disclosed by Australian detailed above.

With due consideration for appellants' arguments, we are satisfied the board committed no reversible error in sustaining the rejection.

The decision is affirmed.

Affirmed.

---

4. The word "contiguous" is defined by Webster's New International Dictionary, 2nd Edition (1956) as "1. In actual contact; touching; also, near, though not in contact * * *."